# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 19-0224V
UNPUBLISHED

| | |
|---|---|
| GEOFFREY GRIFFIS, | Chief Special Master Corcoran |
|                Petitioner, | Filed: December 20, 2022 |
| v. | |
| | Special Processing Unit (SPU); |
| SECRETARY OF HEALTH AND | Attorneys' Fees and Costs; |
| HUMAN SERVICES, | Reasonable Basis; Influenza (Flu) |
| | Vaccine; Hepatitis A Vaccine; |
|                Respondent. | Guillain-Barre Syndrome (GBS) |

*Anne Carrion Toale, Maglio Christopher & Toale, PA, Sarasota, FL, for Petitioner.*

*Voris Edward Johnson, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On February 8, 2019, Geoffrey Griffis filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain-Barré syndrome ("GBS") as a result of an influenza ("flu") vaccine and hepatitis ("hep A") vaccine that he received on January 30, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On January 24, 2020, a ruling on entitlement was issued, finding Petitioner entitled to compensation for GBS. On December 2, 2021, Respondent filed a proffer on award of compensation ("Proffer") indicating Petitioner should be awarded a total of $182,221.05, for unreimbursed past expenses and pain and suffering. Proffer at 1. I found that Petitioner was entitled to total compensation in the amount of $182,221.05. ECF No. 64.

On January 31, 2022, Petitioner filed a motion seeking a total of $146,354.39 in attorneys' fees and costs. ECF No. 69. Respondent filed an opposition to Petitioner's Application for Attorneys' Fees and Costs, maintaining that although he does not oppose a payment of Attorneys' Fees and Costs, Petitioner has failed to establish a reasonable basis for his lost earnings claim. Respondent's Partial Opposition to Petitioner's Application for Attorneys' Fees and Costs ("Opp."), filed February 11, 2022, ECF No. 70.  On March 21, 2022, Petitioner filed a Reply. ECF No. 72.

On July 27, 2022, Petitioner responded to Respondent's arguments. Petitioner's Reply to Response to Motion ("Reply"), ECF No. 37. Petitioner stands by his claim that the attorneys' fees and costs incurred in support of his lost earning claims was a reasonable expenditure. *Id.* at 17. Petitioner now claims that additional fees and costs were incurred increasing the request of attorneys' fees and costs to the amount of $161,762.13.[3]

For the reasons discussed below, I find there was a reasonable basis for Petitioner's underlying claim and that the associated fees and costs are reasonable. However, I have reviewed the submitted billing records and find a slight reduction in the amount of costs to be awarded appropriate, for the reasons listed below.

## I.      Reasonable Basis

### A.      Legal Standard

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorneys' fees and costs may be awarded, even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013)(discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). As Judge Lettow noted in *Davis*, "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). It may be the only federal fee-shifting statute that permits unsuccessful litigants to recover fees and costs.

---

[3] This increased amount consists of an additional $15,349.50 in attorneys' fees and $58.24 in costs.

However, Congress did not intend that every losing petition be automatically entitled to attorneys' fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to obtaining fees in an unsuccessful case. The special master or court may award attorneys' fees and costs in a case in which compensation was not awarded only if "that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit explained, whether a discretionary fees award is appropriate involves two distinct inquiries – a subjective one when assessing whether the petition was brought in good faith and an objective one when ascertaining whether reasonable basis existed. *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632, 635 (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "Good faith is a subjective test, satisfied through subjective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.,* 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("*Cottingham I*"). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).

Cases in which good faith has been found to be lacking often involve petitioners who failed to produce or actively concealed evidence undermining their claims. *Purnell-Reid v. Sec'y of Health & Hum. Servs.,* No. 18-1101V, 2020 WL 2203712 (Fed. Cl. Spec. Mstr. Apr. 6, 2020); *Crowding v. Sec'y of Health & Hum. Servs.,* No. 16-0876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019); *Heath v. Sec'y of Health & Hum. Servs.*, No. 08-0086V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011); *Carter v. Sec'y of Health & Hum. Servs.*, No. 90-3659V, 1996 WL 402033 (Fed. Cl. Spec. Mstr. July 3, 1996).

"Additionally, a petitioner's attorney's conduct may also be relevant when evaluating good faith." *Purnell-Reid*, 2020 WL 2203712, at *6. "Counsel still have a duty to investigate a Program claim even if they reasonably find their client to be a credible individual." *Cortez v. Sec'y of Health & Hum. Servs.*, No. 09-0176V, 2014 WL 1604002, at *8 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). Factors, such as a looming statute of limitations and the conduct of counsel, are properly considered when determining whether good faith exists – but *do not bear* on the claim's objective basis. *Simmons,* 875 F.3d at 636;

3

*Amankwaa v. Sec'y of Health & Hum. Servs*., 138 Fed. Cl. 282, 289 (2018) ("the effort that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period . . . are properly evaluated in determining whether a petition was brought in good faith").

"Reasonable basis, on the other hand, is an objective test, satisfied through objective evidence." *Cottingham I,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James- Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665 at 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish *some evidence* in support of the claim.'" *Id.* (quoting *Chuisano,* 116 Fed. Cl. at 288, emphasis added in *Wirtshafter*). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II")*. "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

## B.    Existence of Reasonable Basis

When a petitioner receives vaccine injury compensation, an award of reasonable attorneys' fees and costs is assured. 42 U.S.C.A. § 300aa - 15(e)(1). The statute specifically states that "[i]n awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover-- (A) reasonable attorneys' fees, and (B) other costs, incurred in any proceeding on such petition. *Id*. Because Petitioner was successful in the underlying claim, an award of reasonable attorneys' fees and "other costs" is assured in this case.

This case presents an unusual circumstance as Respondent has not contested reasonable basis to the underlying claim. Rather, Respondent claims that Petitioner lacked a reasonable basis in requesting lost earnings when this case entered the damages phase. Specifically, Respondent objects to the "more than $52,000.00 paid to Mr. Brown [Petitioner's expert] for his expert report (Pet. Ex. 67 at 1-2) - in connection with Petitioner's claim for lost earnings." Respondent disputes that Petitioner established a reasonable basis for his lost earnings claim, and therefore objects to Petitioner receiving any fees and costs in connection with that aspect of the claim.

In reviewing Respondent's argument, I find that the objection to Petitioner's claim for expert fees to substantiate his claim for lost earnings is unpersuasive.  First, the Vaccine Act requires a reasonable basis to the underlying claim, which Respondent does not contest. Second, the Act also requires that Petitioner be compensated for "reasonable attorneys' fees" and "other costs." The plain reading of the text of the statute does not require extending the finding of a "reasonable basis" to each individual claim for damages.

In this case, Petitioner reasonably anticipated that Respondent would require him to substantiate his claim for lost earnings, which was what in fact occurred. Petitioner hired an expert (with permission of the Court) and procured a written report to substantiate his lost earnings claim. While the claim for lost earnings was ultimately waived by Petitioner, it did not absolved Petitioner of his claim to be reimbursed for the expert's fees. Respondent did not cite to any cases in his Opposition to support his argument that Petitioner's claim for expert fees in a *successful* Program case should fail for lack of a reasonable basis. Whether or not I agree with Respondent's argument that Petitioner had no reasonable expectation of receiving lost earnings is not a question that needs to be addressed in this ruling, as I find that there is insufficient evidence to deny Petitioner's claim to be reimbursed for his expert's fees, in total. Thus, I find that Petitioner is entitled to be reimbursed for expert fees related to his lost earnings claim.

However, fees and costs must be "reasonable." Vaccine Act § 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *See Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed.Cir.1994). To this end, special masters have discretion in determining what a reasonable fee award is, and may reduce hours *sua sponte,* apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.,* 86 Fed. Cl. 201, 208–09 (2009); *Perreira,* 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

Petitioners bear the same reasonableness burden in seeking fees as they do in obtaining an award of costs. *Perreira,* 27 Fed. Cl. at 34. When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g., Gardner–Cook v. Sec'y of Health & Human Servs.,* No. 99–480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 404 (Fed.Cir.1987) (interpreting the Equal Access to Justice Act); *Presault,* 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

While I do not find Respondent's objection to the entitlement for an award of costs to Petitioner for his claim for reimbursement of expert costs to be persuasive, I will consider Respondent's objection in the amount awarded to Petitioner for his expert costs.

## II.   Appropriate Amount to be Awarded

### A.   Legal Standard

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a

petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (2011).

## B.   Attorneys' Fees

### 1.   Hourly Rates

Petitioner requests the following rates of compensation for his attorney Anne C. Toale: $402/hour for 2018; $420/hr for 2019; $445/hr for 2020; $475/hr for 2021 and $500/hr for 2022. ECF No. 69-1 at 32. These requested rates are reasonable and consistent with what has previously been awarded for work performed by Ms. Toale and will therefore be awarded.

## C.   Attorney Costs

Petitioner originally requested reimbursement in the amount of $65,088.93 for attorney costs consisting of expert costs, medical records, and the Court's filing fee. I find the amounts requested for obtaining medical records and the Court's filing fee to be reasonable and award that amount in full. However, the amount requested for Petitioner's expert requires some reduction for the reasons set forth below.

Mr. Griffis requests an award of costs in the amount of $52,286.44, to satisfy the fees of CliftonLarsenAllen LLP ("Clifton"), the accounting firm that analyzed Petitioner's lost earnings and provided Petitioner's counsel with an expert report to that end. Respondent contends that any lost business earnings that Petitioner incurred related to a failed commercial real estate project ("Congress Heights") "resulted from events that were set in motion years before he suffered GBS, and despite petitioner's assertions to the contrary, the legal and political problems plaguing this project were not caused or exacerbated in any way by petitioner's GBS." Opp. at 6. Further, Respondent argues that "any argument that petitioner's GBS caused the Congress Heights project to fail is based on nothing more than petitioner's own unsupported speculation." *Id*. In reply, Petitioner first notes that he was granted permission by the Court to obtain an expert report. Reply at 6. Petitioner also asserts that the Clifton's expert report was necessary to evaluate the amount of Mr. Griffis's lost earnings, because it required "calculating the anticipated profits of a given deal, anticipating the real estate market, anticipating unforeseen expenses, and accounting for all the other impactful minutiae of business transactions…" Reply at 9. Petitioner states that without such a report, "petitioner would have not had even a hope of success at demonstrating his lost wages in accordance with 'generally recognized actuarial principles and projections." *Id*.

I note that Petitioner is correct that he obtained permission of the Court to obtain the expert report, a point that is factored into my ruling in allowing Petitioner to be reimbursed for his expert's fees. Thus, the remaining issue is whether Petitioner's expert costs are reasonable.

As with determining the proper amount of recoverable attorney's fees, the reasonableness requirement also applies to costs, including consultant and expert fees. *Scharfenberger v. Sec'y of Health & Hum. Servs.*, No. 11-221V, 2015 WL 3526559, at *12 (Fed. Cl. May 15, 2015), *aff'd*, 124 Fed. Cl. 225 (2015). Whether an expense is reasonable "may be evaluated from a paying client's perspective ... If a hypothetical yet reasonable client would be willing to pay for an expert's report, then it is appropriate to award compensation for that expert's report." *Torday,* 2011 WL 2680717, at *2 (citing *Hensley,* 461 U.S. at 433–34); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections,* 522 F.3d 182, 184 (2d Cir.2008).

Clifton charged between $150 -$410 per hour for their services and worked approximately 265 hours reviewing Mr. Griffis's files and preparing the 24-page report, seven appendices with corresponding analyses (total report is 162 pages), and additional exhibits related to the report. Given the extensive documentation that had to be reviewed and taking into account (as best I can after the fact), it appears that the majority of the costs incurred by Clifton are reasonably incurred.

However, there are some vague descriptions of the hours incurred contained within Clifton's invoices that are difficult to decipher the type of work being performed. For example, on June 24, 2019, "W Brown" billed 0.80 hours for "Time". Ex. 67 at 38. Similarly, on February 21, 2020, "C Kucik" billed one hour of time as "Worked on." Ex. 67 at 55. These vague entries will be deducted from the total costs billed by Clifton,[4] for a total amount of the deduction as $1,755.80.

I emphasize that this decision does not decide whether I would have awarded Petitioner any compensation associated with his lost business earnings claim. Given Respondent's objections, it is likely I would have denied or greatly reduced any claim for Petitioner's lost business earnings. However, given my consent to Petitioner's request to obtain the expert report and the overall reasonableness of the costs incurred in preparing the report (not to the merits of the claim for lost business earnings), I will award the costs associated with the Clifton report minus the deductions discussed above.

---

[4] On March 30, 2020, April 13, 2020, "C Kucik" billed two hours as "worked on." On May 18, 2020, "L Thomasson" billed 0.12 as "Review". On June 3-4, 2020, "C Kucik" billed 3 hours as "Report" with no further details.

### III.     CONCLUSION

The Vaccine Act permits an award of reasonable attorneys' fees and costs. Section 15(e). Accordingly, I hereby GRANT Petitioner's Motion for attorneys' fees and costs. I award a total of **$160,006.33** (representing $96,673.20 in fees and $63,333.13 in costs) as a lump sum in the form of a check jointly payable to Petitioner and mctlaw. **Petitioner requests payment be forwarded to mctlaw, 1605 Main Street, Suite 710, Sarasota, Florida, 34236**. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.